JOURNAL ENTRY AND OPINION
{¶ 1} In this action filed to quiet title in a piece of real property, plaintiff-appellant Regina Kay, the original owner, appeals from the order of the trial court that adopted the magistrate's decision generally in favor of defendant-appellee Marlene Schiffer, appellant's only daughter.
 {¶ 2} Appellant argues the magistrate made an error of law in allocating the burden of proof. She contends since a close relationship between the parties existed at the time of the property transfer, it was appellee's burden to prove she exerted no undue influence in effecting the transfer, rather than appellant's burden to prove the elements of fraud. Appellant therefore asserts the trial court's adoption of the decision awarding judgment to appellee constituted error. This court disagrees. Consequently, the trial court's order is affirmed.
 {¶ 3} The facts of this case are not in dispute. Appellant and her husband came to this country in 1948. By 1959, the family eventually grew to include three children. The two eldest children were sons Harvey and Sammy, and the youngest child was appellee, daughter Marlene.
 {¶ 4} In 1967, appellant purchased the subject property, located at 2283 Halcyon Road in Beachwood, Ohio. Her two sons moved away from home in the late 1970s or early 1980s; thereafter, appellant's relationship with them soured. Since appellant's husband was in ill-health, appellant came to depend upon appellee for "everything," including transportation, health assistance, emotional support, and companionship. Appellant, however, continued to handle her own household and financial decisions.
 {¶ 5} In 1986, appellant had an attorney prepare a new will. Appellant's husband was granted a life estate in any real estate appellant owned at the time of her death, with most of the remainder of her estate to pass to appellee. Appellant further nominated appellee to be the executrix of the estate.
 {¶ 6} In the autumn of 1990, appellant appeared at her attorney's office with appellee, and informed the attorney she wished to convey half her interest in the real property to appellee. After the attorney prepared the document, appellant signed it. That deed was recorded on October 10, 1990.
 {¶ 7} In 1991, appellant returned to the attorney. Expressing concern that her sons would "fight" with appellee over the family home after appellant's death, appellant requested the attorney to prepare a quit-claim deed which conveyed all of appellant's interest in the property to appellee. Appellant also desired the attorney to prepare a "General Power of Attorney" appointing appellee to act as her "attorney in fact."
 {¶ 8} Appellant's instructions were followed. Appellant also executed those two documents, both of which then were recorded on November 21, 1991. Appellant paid for these services; appellee never exercised any of her powers of attorney for her mother.
 {¶ 9} The record reflects during this time period appellant also converted some bank accounts to joint and survivor accounts with appellee as co-depositor, and tax bills for the property were paid with accounts to which appellee contributed funds. In 1993, however, appellee married and moved to California. Her relationship with appellant subsequently deteriorated. Although appellant eventually no longer permitted appellee to pay a portion of the taxes on the property, she made no request to appellee to transfer the property back to her.
 {¶ 10} In 1993, appellant's oldest son Harvey demanded of appellee that she return the property to appellant. He indicated appellant had denied signing the deeds that conveyed the property out of her name. Appellee countered with a request for the return of some personal property she had left in the family home.
 {¶ 11} In 1994, appellant commenced the instant action, asserting in pertinent part appellee had procured the deeds that conveyed to her ownership of the property by fraud. Appellee's answer denied the allegations of the complaint, and, additionally, asserted counterclaims. Appellee indicated therein that her brothers had "coerced and/or tricked" appellant into filing the action, had further sought to "coerce" appellee into deeding the premises to them, and had refused to return her personal property.
 {¶ 12} The record reflects that, in early 2000, a hearing was held before a magistrate. Several witnesses testified, including appellant and appellee, and the parties presented numerous documentary exhibits for the magistrate's consideration. The magistrate subsequently issued a decision, finding appellant "completely failed in her burden of presenting clear and convincing evidence to establish her allegations of fraud as required by law." Appellee had, however, convinced the magistrate she was "holding title [in the property] for the benefit of [appellant] during her lifetime." The magistrate therefore recommended judgment for appellee on most of the claims.
 {¶ 13} Appellant filed objections to the decision. She argued the magistrate had made a mistake of law by failing to "take into account the effect of the relationship [between appellant and appellee] on the conveyance" of property. Appellant asserted the relationship created a presumption of invalidity, which was appellee's burden to overcome.
 {¶ 14} Ultimately, the trial court issued an order adopting the magistrate's decision. Judgment was rendered for appellee on appellant's claim seeking to invalidate the conveyance of the property.
 {¶ 15} Appellant's appeal of that order presents the following assignment of error for review:
 {¶ 16} "I. The trial court erred by adopting the Magistrate's Decision, which decision improperly placed the burden of proof, with respect to the validity of a questioned inter vivos gift, upon the donor."
 {¶ 17} Appellant argues the trial court's order must be reversed, because the magistrate failed to consider the legal effect a "close mother-daughter relationship" would have upon the transfer of the property. She contends such a relationship was fiduciary in nature, thus requiring appellee to establish the validity of the transaction, rather than requiring appellant to establish the elements of her claims of fraud.
 {¶ 18} Appellant's argument cannot be countenanced, since it is premised upon citation to legal authority that is inapposite to the facts herein. The cases cited by appellant concern grantors who no longer are available to testify, and grantees that have obtained the propertypursuant to the power of attorney. See, e.g., Bobko v. Sagan (1989),61 Ohio App.3d 397; Cent. Trust Co. v. Warburg (Aug. 17, 1994), Hamilton App. No. C-930218. In this case, the law pertaining to simple inter vivos gifts applies.
 {¶ 19} The court in Schwinn v. Baggott (June 2, 1992), Montgomery App. No. 12930, defined an inter vivos gift as "an immediate, voluntary, gratuitous and irrevocable transfer of property to another by a donor who is competent to act." In this case, following the hearing, appellant suggested her claims of fraud actually were assertions that the property was obtained by "undue influence." The Schwinn court further noted that such an assertion does not shift the burden of proof; rather, "the party seeking to set aside the gift bears the burden of proving by clear and convincing evidence that undue influence was brought to bear." See also,Studniewski v. Krzyzanowski (1989), 65 Ohio App.3d 628; In re Estate ofWirebaugh (Aug. 9, 1991), Wood App. No. WD-90-18.
 {¶ 20} Appellant, therefore, was required to produce evidence to establish the four elements of undue influence. These have been set forth as follows: a susceptible party; the other's opportunity to influence that party; the imposition or attempted imposition of improper influence; and, a result that shows the effect of improper influence.Schwinn v. Baggott, supra.
 {¶ 21} In this case, the magistrate's assessment of the credibility of the witnesses is given deference. The magistrate specifically found that appellant intended to give appellee the family home during her lifetime. From the testimony, the magistrate determined appellant decided to do so in order to prevent her sons from taking either anything away from her before her death, or anything away from appellee after appellant's death. The magistrate specifically found appellant to be a "strong, intelligent and forceful woman" who was competent to handle her own affairs. Thus, all the requirements of a valid inter vivos gift free from undue influence both were considered by the magistrate and were met by the evidence.
 {¶ 22} Since the magistrate made no error of law, the trial court properly adopted the magistrate's decision. Minnich v. Burton (July 21, 2000), Miami App. No. 99 CA 48. Accordingly, appellant's assignment of error is overruled.
 {¶ 23} The judgment is affirmed.
Judgment affirmed.
Michael J. Corrigan and James J. Sweeney, JJ., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.